Filed 11/5/21  P. v. Velasquez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RAMON HERNANDEZ VELASQUEZ,<br><br>    Defendant and Appellant. | D079053<br><br><br>(Monterey County Super. Ct. No. 19CR001776) |

APPEAL from a judgment of the Superior Court of Monterey County, Mark E. Hood, Judge.  Affirmed in part, reversed in part, and remanded for resentencing.  Request for judicial notice granted.

Jeffrey Manning-Cartwright, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, René A. Chacón and Bruce Ortega, Deputy Attorneys General for Plaintiff and Respondent.

In 2016, Ramon Hernandez Velasquez shot at a vehicle driven by an acquaintance, Sergio A. Fortunately, apart from hitting a tire on a nearby parked truck, he missed. In a separate road rage incident a year later, Velasquez pointed a replica gun at another driver and threatened to kill him. The charges were joined in a single complaint and tried together.

A jury convicted Velasquez of shooting at an occupied motor vehicle, assault with a firearm, and found true allegations that he personally used a firearm. (Pen. Code,[1] §§ 246, 245, subd. (a)(2), 12022.5.) For the road rage incident, he was convicted of making criminal threats and brandishing a replica firearm. (§§ 422, 417.4.) The court sentenced Velasquez to five years in prison and imposed various fines and fees. Three years of the prison term resulted from the gun enhancement.

Velasquez's appellate arguments fall into three main categories. First, he attacks the judgment in its entirety, asserting the trial court (1) erroneously denied his motion to sever the 2016 from the 2017 charges, and (2) abused its discretion in not conducting a mental health diversion eligibility hearing. In the event we determine that latter issue was forfeited by defense counsel's failure to request diversion, he asks us to nevertheless consider it in the exercise of our discretion, or alternatively in the context of a claim that his counsel rendered ineffective assistance by failing to make the request.

Second, he contends the convictions arising from the shooting incident should be reversed because the trial court refused to instruct on a lesser included offense, grossly negligent discharge of a firearm. Third, Velasquez claims the court committed sentencing error by not (1) considering whether to

---

[1]     Undesignated statutory references are to the Penal Code.

2

strike the firearm enhancement; and (2) conducting an ability-to-pay (*Dueñas*)[2] hearing. Anticipating we might conclude those claims are also forfeited because defense counsel failed to raise them at trial, he again asks that we nevertheless consider them, or alternatively that counsel was ineffective in failing to preserve the points in the trial court.

We will affirm the convictions, but remand to allow the trial court to exercise its discretion on whether to strike the firearm enhancement. As a result, the *Dueñas* issue is moot; Velasquez may request an ability-to-pay hearing at resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The July 2016 Shooting*

On an early evening in July 2016, Sergio was driving home from work when he noticed he was being followed by a pickup truck driven by Velasquez. Sergio was concerned because there was some animosity between them.

Minutes later, while Sergio was stopped at an intersection in a residential neighborhood and Velasquez's truck was about 120 to 150 feet behind him, Sergio glanced in his side view mirror and saw Velasquez "pulling something and firing" gunshots at him. In a contemporaneous 911 call, Sergio reported that "Ramon" was "tryin' to shoot" him. Neither Sergio nor his vehicle were hit, but a bullet punctured a tire on a truck parked nearby.

---

[2]     *People v. Dueñas* (2019) 30 Cal.App.5th 1157.

B.  *The May 2017 Road Rage Incident*

During morning rush hour in May 2017, Seth B. was driving on a freeway when a truck driven by Velasquez suddenly cut in front of him.  Seth braked hard, barely avoiding a collision.  As the two men drove alongside each other a few minutes later, each shouted "fuck you" to the other.  Seth was "ok with that and going on [his] way," but Velasquez apparently was not.  He pointed a gun at Seth yelling, "You want to get shot?  You want me to kill you?"

Seth jotted down Velasquez's license number and called 911.  While on that call, Velasquez again pulled alongside and pointed a gun at him.  The next day, police found a bolt-action and a semiautomatic style BB gun in Velasquez's truck.

DISCUSSION

A.  *The Court Did Not Abuse Its Discretion in Denying the Motion to Sever*

The district attorney included charges arising from both incidents in a single complaint.  Before trial, Velasquez's attorney filed a motion to sever counts 1 and 2 (2016 shooting) from counts 3 and 4 (2017 road rage).  The trial court denied the motion, determining the counts "are of the same class, assaultive conduct, and accordingly, are properly joined."

Joining different offenses for a single trial " ' "prevents repetition of evidence and saves time and expense to the state as well as to the defendant." ' " (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1218 (*Alcala*); see also *People v. Soper* (2009) 45 Cal.4th 759, 772 (*Soper*).)  To implement this policy, section 954 provides:  "An accusatory pleading may charge two or more different offenses connected together in their commission, . . . or two or more different offenses of the same class of crimes or offenses."

Assaultive crimes against the person are of the same class under section 954. (*People v. Walker* (1988) 47 Cal.3d 605, 622.) In this case, charges arising from the 2016 incident—shooting at an occupied vehicle and assault with a firearm—are clearly assaultive crimes, and Velasquez does not argue otherwise. He does contend, however, that charges arising from the road rage incident are not.

We disagree. Making criminal threats and brandishing a replica gun are assaultive crimes because each involves the threatened use of force. (*Doe v. Saenz* (2006) 140 Cal.App.4th 960, 987 ["crimes against the person" are offenses in which the perpetrator uses or threatens to use force].) *People v. Thomas* (1990) 219 Cal.App.3d 134 (*Thomas*), albeit not directly on point, is close. There, this court held that felonious possession of a firearm is an assaultive crime. (*Id.* at pp. 139–140.) For purposes of classifying crimes under section 954, there is no relevant distinction between *Thomas* (felonious possession of a gun), and Velasquez's case (making criminal threats while brandishing a gun).[3]

In any event, we would still affirm the order denying severance even if the charges were of different classes. Under section 954, joinder is also appropriate where "two or more different offenses" are "connected together in their commission." Two offenses occurring at different times and places and against different victims are nevertheless "connected in their commission" where they share a "common element of substantial importance." (*Alcala*,

---

[3]     Velasquez, unable to distinguish *Thomas, supra,* 219 Cal.App.3d 134, instead contends it was incorrectly decided and should not be followed. However, the purpose of prohibiting a felon from possessing a gun is "to protect the public welfare by precluding the possession of guns by those who are more likely to use them for improper purposes." (*People v. Robinson* (2011) 199 Cal.App.4th 707, 714.) This heighted threat of lethal force explains *Thomas*'s holding.

*supra*, 43 Cal.4th at p. 1218.)  This occurs, for example, where offenses share a common intent or motivation.  (*Id.* at p. 1219 [common intent "to brutally kill young females"].)  Here, the joined counts are connected together in this sense because they share a common intent to intimidate and terrorize.[4]

Determining that consolidation was appropriate under section 954 is, however, only the beginning of the analysis.  Although a trial court is authorized to consolidate where appropriate under section 954, "it is not required to do so."  (*People v. Merriman* (2014) 60 Cal.4th 1, 37 (*Merriman*).)  "In exercising its discretion in this regard, the court must weigh 'the potential prejudice of joinder against the state's strong interest in the efficiency of a joint trial.' "  (*Ibid.*)  Here, the trial court did so, concluding there was no prejudice.  We review the ruling for abuse of discretion and will reverse only upon a "clear" showing of prejudice.  (*Ibid.*)

In evaluating the potential prejudice from consolidation in a noncapital case, courts consider:  " '(1) the cross-admissibility of the evidence in separate trials; (2) whether some of the charges are likely to unusually inflame the jury against the defendant; [and] (3) whether a weak case has been joined with a strong case or another weak case so that the total evidence may alter the outcome of some or all of the charges . . . .' "  (*Alcala, supra,* 43 Cal.4th at pp. 1220−1221.)

The first factor, cross-admissibility, cuts both ways in this case.  The central issue at trial whether Velasquez was the shooter in the 2016

---

[4]    Because the offenses are connected in this manner, it is unnecessary to address Velasquez's extensive argument that his driving the "same truck" in both incidents is an inadequate basis for joining the counts.

incident.[5]  Evidence that Velasquez made criminal threats and brandished a gun in 2017 would be relevant to show he fired at Sergio in 2016 only if these two incidents were "so unusual and distinctive to be like a signature" (*People v. Abrahamian* (2020) 45 Cal.App.5th 314, 329)—which clearly they are not.[6] As the trial court succinctly stated, "We have lots of drive-bys and exhibiting weapons and shooting at cars.  Are you suggesting anybody who drives by is likely this defendant?"  However, connecting Velasquez to the vehicle used in the 2016 shooting with evidence he drove the same one in the road rage incident is relevant to show identity.  And offered for that purpose, it is likely admissible under Evidence Code section 1101, subdivision (b).[7]

In any event, "even the complete absence of cross-admissibility does not, by itself, demonstrate prejudice from a failure to order a requested severance." (*Alcala, supra*, 43 Cal.4th at p. 1221.)  The Supreme Court "repeatedly ha[s] found a trial court's denial of a motion to sever charged offenses to be a proper exercise of discretion even when the evidence

---

[5]  In closing argument, defense counsel told the jury, "What this trial is about is whether or not [Velasquez] was the shooter.  And that is what we're going to contest."

[6]  Rejecting the prosecutor's argument on cross-admissibility, the trial court colorfully explained:  "Identity under [Evidence Code section] 1101 . . . the person who committed this offense it is so unique, so distinctive that we always know that [he] commits this type of crime where he enters the window through the top window, uses a diamond cutter, leaves the milk carton out, has a bowl of cereal, watches TV and leaves the TV on a particular channel of Gilligan's Island, and there's no other burglar that does this . . . ."

[7]  "Nothing in this section prohibits the admission of evidence that a person committed a crime . . . when relevant to prove some fact [(such as identity)] other than his or her disposition to commit such an act."  (Evid. Code, § 1101, subd. (b).)

underlying the charges would not have been cross-admissible in separate trials." (*Ibid.*, italics omitted.) Accordingly, even assuming no cross-admissibility, that alone would not require reversal. (See *People v. Landry* (2016) 2 Cal.5th 52, 78 (*Landry*).)

Velasquez argues the court abused its discretion in denying severance because the 2016 shooting was "comparatively alarming and inflammatory," and "could motivate" jurors to "to rationalize disregard of a reasonable doubt on the 2016 [shooting] incident." We view the relationship among the charges differently. Neither incident was particularly inflammatory; all the charges involved a violent outburst that was either unprovoked or grossly disproportionate to provocation. Although "evidence of two violent crimes might lead a jury to infer that a defendant is violent," that possibility "does not establish that any of the charges were unusually likely to inflame the jury." (*Landry*, *supra*, 2 Cal.5th at p. 78.)

Moreover, the evidence in both cases was, roughly speaking, equally strong. Velasquez's argument is that the 2016 case was comparatively weak. But Sergio identified Velasquez as the shooter, both during his 911 call, and when interviewed by police. Plus, surveillance video showing Velasquez's truck in the area close in time to the shooting corroborated his eyewitness account.

Disagreeing with this assessment, Velasquez notes that in 2016 the district attorney filed the shooting charges but later dismissed them—and did not refile until 2019 when joined with the road rage incident.[8] He claims this "suggests circumstantially that the weakness of the case on the [2016] incident was problematic for the prosecution, which held off on trying it, and

---

8     We grant Velasquez's unopposed request for judicial notice of certain docket entries. (Evid. Code, §§ 452, subd. (d), 453, 459.)

that the potential jury impact of the stronger case on the [road rage] second incident presented itself as a solution, leading to the joined charges moving forward."

This is an interesting theory, but we are unpersuaded for three reasons. First and foremost, Velasquez did not make this argument in the trial court. As a result, the record is silent about *why* the district attorney dismissed and later refiled the shooting charges. Velasquez's theory might be right, but we can hypothesize several benign explanations too. The place to develop the requisite facts is in the trial court, and absent that, we cannot speculate about the People's motives. (See *People v. Ayala* (2000) 24 Cal.4th 243, 267 ["We will not reverse the judgment on the basis of speculation regarding theoretical possibilities"].)

Turning to the evidence, Velasquez further claims the shooting case was comparatively weak because (1) in a photograph lineup, Sergio was only "60 to 70 percent" certain in identifying Velasquez; and (2) he did not actually see gunfire, but only smoke afterwards. Velasquez's argument is fine as far as it goes, but it does not go far enough. It ignores the most incriminating evidence: (a) the bullet hole in the truck parked in the line of fire; (b) the contemporaneous 911 call where Sergio identified Velasquez; and (c) surveillance video placing Velasquez's truck near the crime scene about the time of the shooting.

In any event, even if there is some degree of mismatch, "it always is possible to point to individual aspects of one case and argue that one is stronger than the other. A mere imbalance in the evidence, however, will not indicate a risk of prejudicial 'spillover effect,' militating against the benefits of joinder and warranting severance of properly joined charges." (*Soper,*

9

*supra,* 45 Cal.4th at p. 781.) The "salient point" in weighing relative strength "is that the proffered evidence was sufficiently strong in both cases." (*Ibid.*)

One more step remains. Even if denying severance was not an abuse of discretion when made, "we must further inquire whether events *after* the court's ruling demonstrate that joinder actually resulted in 'gross unfairness' amounting to a denial of defendant's constitutional right to a fair trial or due process of law." (*Merriman, supra,* 60 Cal.4th at p. 46.) A defendant has a " 'high burden' " to establish gross unfairness from joinder (*People v. Ybarra* (2016) 245 Cal.App.4th 1420, 1438), and Velasquez has not met it.

There is nothing particularly inflammatory about road rage. The sad reality is it has become so ubiquitous on California highways, the Driver Handbook devotes an entire chapter to dealing with aggression and rage.[9] It is not the type of charge that would cause a jury to inappropriately convict on charges arising from the 2016 shooting. (Compare with *People v. Earle* (2009) 172 Cal.App.4th 372, 401 [spillover effect from indecent exposure evidence was likely to inflame the jury against defendant in connection with weaker sexual assault charge].)

B. *Velasquez Forfeited His Claim for Mental Health Diversion by Failing to Request It in the Trial Court.*

In 2018, nearly two years *before* Velasquez's trial, the Legislature enacted section 1001.36, which authorizes a pretrial diversion program for defendants with qualifying mental disorders. Pretrial diversion is " 'the postponement of prosecution, either temporarily or permanently, at any point

---

[9] (Dept. of Motor Vehicles, Cal. Driver Handbook, Dealing With Aggressive Drivers and Road Rage (2021) <https://www.dmv.ca.gov/portal/handbook/california-driver-handbook/dealing-with-aggressive-drivers-and-road-rage/> [as of Nov. 4, 2021], archived at <https://perma.cc/7QGA-6283>.)

in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment.'" (*People v. Frahs* (2020) 9 Cal.5th 618, 626 (*Frahs*).) If the trial court grants mental health diversion, the defendant may be referred to inpatient or outpatient mental health treatment for no more than two years. (§ 1001.36, subd. (c)(1)(B)(3).) "If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion." (*Id.*, subd. (e).)

According to the defense sentencing memorandum, Velasquez began using methamphetamine in 2015 and became addicted. In seeking probation, Velasquez's attorney stated, "The only explanation for what happened on the day of the incident and other cases . . . is an addiction to drugs. . . . ¶ [H]e was using every single day. And at that time he could not realize what it was doing to him."

For the first time on appeal, Velasquez contends his drug addiction was a mental disorder making him eligible for diversion. He claims the trial court abused its discretion in not conducting an eligibility hearing.[10]

The threshold problem in advancing this on appeal is that defense counsel never asked the trial court for an eligibility hearing. And that omission could not be due to the novelty of the diversion program. Diversion had been available to defendants for nearly *two years* before Velasquez's

---

[10]     In addressing this contention, we assume without deciding that methamphetamine addiction is a qualifying "mental disorder" within the meaning of section 1001.36, subdivision (b)(1)(A).

sentencing.[11]  As a result, the issue is forfeited on appeal.  (*People v. Oneal* (2021) 64 Cal.App.5th 581, 592, fn. 6.)

Anticipating forfeiture, Velasquez makes several arguments seeking to avoid its effects, but none are persuasive.  First, he contends the trial court should have conducted an eligibility hearing "on its own motion."  Citing *Frahs*, *supra*, 9 Cal.5th 618, he argues such a duty is consistent with the Legislature's intent to apply diversion as broadly as possible.

To the contrary, the trial court had no sua sponte obligation to conduct an eligibility hearing under section 1001.36.  Subdivision (a) of the statute provides that "[o]n an accusatory pleading . . . , the court *may,* after considering the positions of the defense and prosecution, grant pretrial diversion to a defendant . . . ."  (*Id.*, subd. (a), italics added.)  Absent evidence to the contrary, the word "may" grants permissive or discretionary authority.  (See *Ajaxo, Inc. v. E\*Trade Financial Corp.* (2020) 48 Cal.App.5th 129, 165 [use of word "may" gave trial court discretion to award royalties but did not require such an award].)  Moreover, section 1001.36, subdivision (b)(1)(A) provides that "[e]vidence of the defendant's mental disorder shall be provided by the defense"—consistent with a commonsense view that if a defendant desires diversion, he needs to ask for it in the trial court.  Velasquez points to no statutory language indicating otherwise, nor any case holding or even intimating there is a sua sponte duty.

Alternatively, Velasquez asks that we exercise our discretion to consider the issue despite forfeiture.  In an argument that seems inconsistent with his sua sponte duty assertion, he claims the trial court "cannot be faulted" for failing to conduct an eligibility hearing because *Frahs*, *supra*, 9

---

[11]    Section 1001.36 became effective on June 27, 2018.  (Stats. 2018, ch. 34, §§ 24.)  Trial was in March 2020, and Velasquez was sentenced in June 2020.

Cal.5th 618 was decided two days *after* he was sentenced.  Velasquez asserts his case "resembles . . . the situation in [*Frahs*], where the statute was not yet in effect when the case was before the trial court."

This argument is untenable, and in no relevant way does Velasquez's case resemble *Frahs*.  The key difference is that section 1001.36 did not exist when the defendant in *Frahs* was tried and sentenced, but only became effective while his appeal was pending.  (*Frahs*, *supra*, 9 Cal.4th at pp. 638.)  On those facts, *Frahs* holds that section 1001.36 applies retroactively to cases not then final.  In contrast here, Velasquez could easily have referenced section 1001.36 at trial, but failed to do so.

Alternatively, Velazquez invokes the rule that a reviewing court has discretion to reach an issue despite forfeiture.  (See *People v. Williams* (1998) 17 Cal.4th 148, 162, fn. 6.)  But the circumstances do not warrant exercising our discretion here.  "[T]he appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue."  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.)  Velasquez's challenge is not based on a newly announced constitutional or statutory principle, nor are there any special circumstances or legal issues that would warrant extraordinary relief from forfeiture.

Finally, Velasquez suggests that defense counsel was constitutionally ineffective by failing to request an eligibility hearing.  "In order to establish a claim for ineffective assistance of counsel, a defendant must show that his or her counsel's performance was deficient and that the defendant suffered prejudice as a result of such deficient performance.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687–692 (*Strickland*).)  To demonstrate deficient performance, Velasquez must show that counsel's performance

" ' "fell below an objective standard of reasonableness . . . under prevailing professional norms." ' " (*People v. Lopez* (2008) 42 Cal.4th 960, 966.)

"It is particularly difficult to prevail on an *appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

At sentencing, defense counsel asked the court to impose probation because "[d]rug addiction has been found to be a mental health condition" and "there's evidence that [Velasquez] can respond to treatment." In light of that statement, Velasquez contends there is no rational explanation for defense counsel's failure to make the same argument under section 1001.36.

We admit to also being puzzled. But since this is a direct appeal and the record is silent, we must consider whether there are other reasonable explanations besides professional incompetence. We can think of several. Counsel might have obtained a psychological evaluation that refused to diagnose a mental disorder. Or he could have discussed the matter with Velasquez, who may have refused to consent to diversion, waive his speedy trial rights, or agree to comply with mental health treatment. (§ 1001.36, subds. (b)(1)(D) & (E).) The record contains no information one way or the other. Accordingly, on direct appeal we cannot conclude counsel's conduct was objectively unreasonable. "Any claim of ineffective assistance based on evidence not in the trial record must be made in a habeas corpus petition." (*People v. Duong* (2020) 10 Cal.5th 36, 56.)

C. *The Court Correctly Refused to Instruct on Grossly Negligent Discharge of a Firearm as a Lesser Included Offense*

Velasquez was charged with maliciously and willfully discharging a firearm at an occupied vehicle (§ 246).[12]  A related statute, section 246.3, subdivision (a) (section 246.3(a)), makes it a crime to "willfully discharge[] a firearm in a grossly negligent manner which could result in injury or death to a person."  It was enacted in 1988, nearly 40 years after section 246, to address the "growing number of urban California residents engaged in the dangerous practice of discharging firearms into the air during festive occasions." (*People v. Leslie* (1996) 47 Cal.App.4th 198, 201.)  The difference between the two offenses is that section 246 requires that a specific target— here, an occupied motor vehicle—be in the defendant's "firing range." (*People v. Bell* (2019) 7 Cal.5th 70, 108 (*Bell*).)  Accordingly, section 246.3(a) is a lesser included offense of section 246.  (*Bell,* at p. 108.)

Defense counsel asked the court to instruct the jury on section 246.3(a) as a lesser included offense.  The court denied the request, stating there was no evidence to support a conviction on the lesser crime but not the greater.  On appeal, Velasquez contends the court erred because there was substantial evidence from which the jury could have found that he did not shoot *at* an occupied vehicle, but rather in a grossly negligent manner "merely in the presence of one."  As explained below, the court correctly declined to instruct on section 246.3(a).

---

[12]    Section 246 provides in part:  "Any person who shall maliciously and willfully discharge a firearm at an inhabited dwelling house, occupied building, occupied motor vehicle, occupied aircraft, inhabited housecar . . . , or inhabited camper . . . is guilty of a felony . . . ."

"A trial court must instruct on a lesser included offense if there is substantial evidence from which a jury could conclude the defendant is guilty of the lesser offense, but not the charged offense." (*People v. Racy* (2007) 148 Cal.App.4th 1327, 1335.) Here, the charged offense (§ 246) proscribes shooting "*either* directly at *or* in close proximity to" an occupied vehicle "under circumstances showing a conscious disregard for the probability that one or more bullets will strike the target or persons in or around it." (*People v. Overman* (2005) 126 Cal.App.4th 1344, 1355–1356.) The offense is not limited to shooting directly at a proscribed target, nor does it require a specific intent to strike the target. (*Id.* at p. 1357.) It prohibits "willfully discharging a firearm in the direction of or towards an occupied motor vehicle." (*People v. Manzo* (2012) 53 Cal.4th 880, 885.)

Thus, to find Velasquez guilty of violating section 246.3(a) but not section 246, the jury would have had to find that he did not fire at or in close proximity to Sergio's truck. (*Bell, supra,* 7 Cal.4th at p. 109.) But there was no substantial evidence of that. Sergio testified Velasquez was shooting *at* him.[13] The bullet hitting the truck parked on Noche Buena between Elm, and Amador corroborates his testimony. The crucial issue separating the charged offense (§ 246) from the lesser included offense (§ 246.3) was whether Sergio's truck was within Velasquez's range of fire. According to the only direct evidence (Sergio's testimony), and the only physical evidence (bullet in the tire), it was.

---

[13]  "Q: Did it appear to you that the defendant was shooting at you through the passenger side window of his vehicle?
  "A: Yes."

In asserting there was enough evidence to warrant instructing on section 246.3, Velasquez focuses on the following portion of Sergio's direct examination:

> "Q: Are you here because of an incident occurred back on July 6th of 2016?
>
> "A: Yes.
>
> "Q: And where did that incident take place?
>
> "A: In the corner of Noche Buena and Elm.
>
> "Q: Is that in Seaside?
>
> "A: Yeah, Seaside.
>
> "Q: And since you mentioned it, what happened at the corner of Noche Buena and Elm?
>
> "A: *It was about a couple of rounds fired. Just not toward me—just shooting or whatever.*
>
> "The court: Sir, I'm right next to you and I can barely hear you.
>
> "A: *Well, just a couple shots were fired.*" (Italics added.)

Based on this one line: "Just not toward me—just shooting or whatever"—Velasquez contends the jury could find "the gun could have been pointed . . . skyward, toward the ground, or down the center of the street" and the shooter "could have missed [Sergio's] truck deliberately."

We might agree if "Just not toward me—just shooting or whatever" was the entirety of Sergio's testimony on the subject. But immediately after, in response to the court's instruction to speak up, Sergio stated, "Well, just a couple shots fired." Then a few minutes later, he testified that Velasquez shot "at" him.

Substantial evidence review includes the whole record, not simply isolated snippets of evidence. (*People v. Cuevas* (1995) 12 Cal.4th 252, 261.) To accept Velasquez's argument, we would have to conclude jurors could

17

rationally believe the isolated bit of testimony ("just shooting or whatever") while rejecting or ignoring the rest of it, which clarified what he had just said. This is not a reasonable interpretation of the testimony. (See *People v. Sanford* (2017) 11 Cal.App.5th 84, 95 [the court cannot rely on "isolated evidence torn from the context of the whole record"].)

Our conclusion that there was insufficient evidence to warrant an instruction on section 246.3(a) finds further support in *Bell*. There, the victim saw someone emerge from a convenience store that had just been robbed. As a robber ran toward the victim's truck, he heard two shots and later found a dent in his passenger side door. Like Sergio testified here, the victim in *Bell* testified the shots were directed at him, although he never actually saw the shooter aim at his truck. (*Bell, supra,* 7 Cal.5th at p. 109.) On appeal, the defendant in *Bell* claimed the trial court erred by failing to instruct on section 246.3(a) as a lesser included offense. (*Bell,* at p. 108.) The Supreme Court disagreed, stating there was no substantial evidence the defendant committed only the lesser offense.[14] (*Bell,* at p. 110.)

D. *Defense Counsel Was Constitutionally Ineffective in Failing to Ask the Court to Strike the Gun Enhancement.*

The jury found that Velasquez "personally used a firearm" in violation of section 12022.5. This had two sentencing consequences. First, it gave the court discretion to impose an additional consecutive prison term of 3, 4, or 10

---

[14] Velasquez contends *Bell* is distinguishable because there the victim's vehicle was dented, presumably by the gunfire, whereas here Sergio's truck was not hit. However, the bullet hole in the parked truck effectively establishes the same fact the dent did in *Bell*—at least one of the shots was directed towards the victim's occupied vehicle.

years.[15] Second, it triggered a 15 percent limit on Velasquez's conduct credit. (§ 2933.1.)[16] In this case, both happened: the court imposed a three-year consecutive term and also limited credits.

Before 2018, a trial court had no discretion to strike or dismiss an enhancement under section 12022.5. However, effective January 1 of that year, the Legislature amended the statute to provide that the court may "in the interest of justice" strike or dismiss "an enhancement otherwise required to be imposed by this section." (§ 12022.5, subd. (c), as amended by Stats. 2017, ch. 682, § 1.)

The record is silent on whether the court knew it had discretion to strike the enhancement. On appeal, Velasquez construes the silence in his favor, concluding it shows the court did not understand it had discretion to strike the enhancement. But actually, the opposite inference usually is drawn. " 'The general rule is that a trial court is presumed to have been aware of and followed the applicable law.' [Citation.] This 'presumption of regularity of judicial exercises of discretion appl[ies] to sentencing issues.' " (*People v. Valenti* (2016) 243 Cal.App.4th 1140, 1178–1179.) In any event, however, the crucial fact is that defense counsel never asked the trial court to strike the enhancement. As a result, the claim of error on appeal is forfeited.

---

15    Under subdivision (a) of section 12022.5, the additional consecutive term cannot be imposed where "use of a firearm is an element" of the underlying felony, but an exception exists where, as here, the defendant is convicted under section 245. (§ 12022.5, subd. (d).)

16    Under section 2933.1, subdivision (a) a person convicted of a felony listed in section 667.5, subdivision (c) accrues no more than 15 percent of worktime credit. Section 667.5, subdivision (c)(8) includes "any felony in which the defendant uses a firearm" charged and proved under section 12022.5.

(See *People v. Scott* (1994) 9 Cal.4th 331, 353 (*Scott*) [failure to object forfeits claims that the trial court failed to make a discretionary sentencing choice].)

To avoid forfeiture, Velasquez contends trial counsel was constitutionally ineffective in failing to ask the court to strike the enhancement. Before addressing this argument, some factual background will help place the legal issues in context.

The overarching question at sentencing was the extent to which mitigating factors would persuade the court to either grant probation or, if not, a lenient prison term. On this point Velasquez presented evidence that was both robust and plentiful. For example, before becoming addicted to methamphetamine in 2015, Velasquez had no criminal history—no juvenile record, no adult convictions, and not even a traffic ticket. He also was consistently employed, working more than 40 hours a week. As the probation report summarized, Velasquez was a "hard-working father, busily engaged in his work and supporting his family."

According to the defense sentencing memorandum, Velasquez's life turned upside down when he began using methamphetamine. After his arrests, he attended support groups "as ordered by the court" and he "described that experience as so positive that he incorporated meetings as part of his regular routine." The defense submitted numerous letters in support of Velasquez, including one from a former employer who stated, "As long as I have been associated with him, I have known [Velasquez] to be an honest, hardworking individual." Defense counsel argued these "unusual circumstances" justified a grant of probation or, if not probation, then a five

year prison sentence composed of the low term on assault (two years), "and the low term on the enhancement, which would be three years."[17]

Before imposing sentence, the court stated, "This case has been difficult for me," noting that Velasquez "got severely addicted to drugs" and eventually "did go to self-help meetings and did learn to control his substance abuse issues." The court commented, "Defendant clearly has a strong employment history and a very dedicated work ethic" along with "extensive community support."

Nevertheless, the court was dismayed by Velasquez's continued refusal to admit responsibility for his conduct. Ultimately, the judge denied probation, but found "the factors in mitigation outweigh the factors in aggravation" and imposed the sentence that defense counsel has recommended: two-years for assault, plus a three-year consecutive term for the enhancement.

A defense lawyer may render ineffective assistance if he "fails to adequately understand the available sentencing alternatives, promote their proper application, or pursue the most advantageous disposition for his client." (*Scott, supra,* 9 Cal.4th at p. 351.) Where counsel "fails to raise 'a significant and obvious issue,' the failure will generally be considered deficient performance under *Strickland, supra*, 466 U.S. 668 if the missed issue is 'clearly stronger than those presented.' " (*In re Hampton* (2020) 48 Cal.App.5th 463, 477.)

---

[17] The prosecutor asked for a seven-year eight-month sentence because the crimes were violent and, despite the convictions, Velasquez still refused to acknowledge he committed the offenses.

We cannot conceive of any tactical reason why defense counsel not only failed to ask the trial court to strike the enhancement, but actually urged the court to impose it. Counsel had already compiled the mitigating evidence and argued it justified probation instead of prison. It would have taken no additional effort to argue in the alternative that it also justified striking the enhancement. Moreover, that request would have been consistent with counsel's strategy to first seek probation and then, if denied, seek a mitigated prison term based on the same evidence. Under these circumstances, counsel's failure to seek the maximum leniency available to his client by asking the court to strike the section 12022.5 enhancement, coupled with his suggestion that the court impose the enhancement, is constitutionally deficient and established by the record on appeal.[18]

The Attorney General maintains, however, that defense counsel may have thought that asking the court to strike the gun enhancement "was a bridge too far" and that Velasquez had "obtained the only leniency he may have deserved when he received the mitigated term." But the fact defense counsel asked for no prison time (i.e., probation) rules this out. As Velasquez aptly notes, trial counsel could not simultaneously believe that striking the gun enhancement would be too much to ask, but asking for probation would not.

---

[18] That said, there is plenty of blame to share. The probation report also does not inform the court of its discretion to strike the enhancement, but to the contrary states that the true finding "*results* in adding an additional and consecutive 3 years, 4 years, or 10 years, to the base sentence." (Italics added.) Similarly, the People's sentencing memorandum asked the court to impose a consecutive four year term on the enhancement without mentioning the court's discretion to strike it.

The remaining question is whether counsel's failing is prejudicial. It was. The tenor of the trial court's remarks before imposing sentence—"[t]his case has been very difficult for me" and "the factors in mitigation outweigh the factors in aggravation" convincingly show the trial court was concerned about and sought to avoid imposing an inappropriately harsh sentence. Especially in light of Velasquez's lack of criminal history, exemplary work ethic, and meaningful strides towards managing his substance abuse, our confidence in the sentencing outcome is significantly undermined. (See *People v. Maury* (2003) 30 Cal.4th 342, 389.)[19] On remand, after receiving input from the parties, the trial court should exercise its discretion and determine whether to strike the section 12022.5 enhancement. We express no opinion on how the court should exercise that discretion in the first instance.[20]

E. *Velasquez May Seek an Ability-to-Pay Hearing on Resentencing*

Relying on *Dueñas*, *supra*, 30 Cal.App.5th 1157, Velasquez contends the trial court violated his due process rights by imposing certain fines and fees without determining he had the financial ability to pay them. Velasquez acknowledges he did not raise this issue in the trial court.

We need not address the issue here. Because we are remanding under the full resentencing rule (*People v. Buycks* (2018) 5 Cal.5th 857, 893), the claim is moot, and Velasquez may seek to show his inability to pay fines and fees at his resentencing hearing.

---

[19] Because of this disposition, it is unnecessary to address Velasquez's alternative argument that we should exercise our inherent discretion to consider this issue.

[20] Because this is the only error, it is unnecessary to consider Velasquez's contention that the judgment should be reversed for cumulative error.

## DISPOSITION

The matter is remanded for a full resentencing hearing, where the trial court may in its discretion determine whether to strike the firearm enhancement. Thereafter, it shall resentence accordingly and shall forward an amended abstract of judgment to the appropriate authorities. In all other respects, the judgment is affirmed.


                                                                    DATO, J.

WE CONCUR:


HALLER, Acting P. J.


AARON, J.

24